UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROBERT TOLOMEO,
JOSEPHINE TOLOMEO, and
KELLY TOLOMEO,
d/b/a DOOR COUNTY VENTURES,

        Plaintiffs,

   v.                                                                   Case No. 04-C-0486

LONNY L. EMANUELSON,
d/b/a EMANUELSON BUILDERS
AND ARCHITECTS,

        Defendant,

and

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

        Intervener Defendant.

**MEMORANDUM AND ORDER**

      This case, which arises out of a failed construction project, is presently before me on a motion for summary judgment by the defendant's insurer. Plaintiffs Robert, Josephine, and Kelly Tolomeo, d/b/a/ Door County Ventures, hired Defendant Lonny L. Emanuelson, d/b/a/ Emanuelson Builders and Architects, to design and construct a home in Egg Harbor, Wisconsin. The plaintiffs, all residents of Illinois, intended the home to serve as a vacation home and as a source of rental income. The plaintiffs terminated Emanuelson prior to the completion of the home, however, because of alleged defects in the design and construction of the home and later filed this lawsuit

seeking damages for breach of contract and professional negligence. My jurisdiction is under 28 U.S.C. § 1332.

Emanuelson tendered the defense of the suit to his insurer, American Family Mutual Insurance Company. American Family intervened seeking a determination of its obligations under its policy. American Family claims that the commercial general liability (CGL) policy it issued to Emanuelson affords no coverage for any of the damages sought by plaintiffs and thus it has no duty to defend or indemnify him. It now seeks summary judgment on that basis. For the reasons that follow, I conclude American Family's motion should be denied.

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Wantz v. Experian Information Sol.*, 386 F.3d 829, 832 (7th Cir. 2004); Fed. R. Civ. P. 56. Summary judgment can be particularly appropriate in contract actions where the disposition of the case involves the interpretation of a contract. *Tingstol Co. v. Rainbow Sales Inc.*, 218 F.3d 770, 771-72 (7th Cir. 2000).

Under Wisconsin law, the construction of a contract is a question of law. *Elkhart Lake's Road Amer. v. Chicago Hist. Races*, Ltd.,158 F.3d 970, 972 (7th Cir. 1998). Judicial interpretation of a contract, including an insurance policy, seeks to determine and give effect to the intent of the contracting parties. *Wisconsin Label Corp. v. Northbrook Property & Cas. Ins. Co.*, 607 N.W.2d 276, 282 (Wis. 2000). Insurance polices are construed as they would be understood by a reasonable person in the position of the insured. *Kremers-Urban Co. v. American Employers Ins. Co.*, 351 N.W.2d 156, 163 (Wis. 1984). However, an insurance policy should not be construed to provide

2

coverage for risks that the insurer did not underwrite and for which it has not received a premium. *Wisconsin Label*, 607 N.W.2d at 283.

These principles were recently recounted by the Wisconsin Supreme Court in *American Family Mut. Ins. Co. v. American Girl, Inc.,* 673 N.W.2d 65, 73 (Wis. 2004), in which the court addressed a coverage question arising under essentially the same policy as the one at issue here. The *American Girl* court also noted that in determining whether coverage exists under a particular policy, Wisconsin courts follow a three-step procedure:

> First, we examine the facts of the insured's claim to determine whether the policy's insuring agreement makes an initial grant of coverage. If it is clear that the policy was not intended to cover the claim asserted, the analysis ends there. If the claim triggers the initial grant of coverage in the insuring agreement, we next examine the various exclusions to see whether any of them preclude coverage of the present claim. Exclusions are narrowly or strictly construed against the insurer if their effect is uncertain . . . . We analyze each exclusion separately; the inapplicability of one exclusion will not reinstate coverage where another exclusion has precluded it. Exclusions sometimes have exceptions; if a particular exclusion applies, we then look to see whether any exception to that exclusion reinstates coverage. An exception pertains only to the exclusion clause within which it appears; the applicability of an exception will not create coverage if the insuring agreement precludes it or if a separate exclusion applies.

*American Girl, Inc.*, 673 N.W.2d at 73 (citations omitted).

The policy at issue in this case obligates American Family to pay "those sums that [Emanuelson] becomes legally obligated to pay as damages because of *bodily injury* or *property damage* to which this insurance applies," and to defend Emanuelson against any suit seeking such damages. (Pless Aff., Ex. A., CGL Coverage Form at 1.) The policy defines "property damage" as:

> a. Physical injury to tangible property, including all resulting loss of use of that property . . . ; or

3

  b. Loss of use of tangible property that is not physically injured . . .

(*Id.* at 11.) To be covered under the policy, property damage must be caused by an "occurrence", which means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.*)

  In this case, there is no allegation of any damage to property other than the house Emanuelson was hired to design and construct and its components. Plaintiffs' replacement carpenter has identified 165 defects in design and/or workmanship. None of the defects are alleged to have resulted in damage or loss of use of property other than the house and its fixtures. In other words, there is no claim that the house collapsed during construction, causing injury or damage to a third party's person or property. (American Family's PFOF ¶ 7-10.)

  Notwithstanding this fact, I conclude that at least some of the damages sought in this case fall within the broad initial grant of coverage of the policy. Plaintiffs claim some of the ductwork installed in the home had to be "torn out" as a result of Emanuelson's defective design or faulty workmanship. (Aff. of George Burnett, Ex. A at 140.) This suggests the duct work was physically injured. In addition, plaintiffs claim a loss of use of the property as a result of Emanuelson's negligence. They claim they have been unable to use the property because of the delay in completion of construction resulting from Emanuelson's negligence. Loss of use of property is expressly included in the policy definition of "property damage". Although it is less apparent that Emanuelson's alleged negligence in performing his contractual obligations constitutes "an occurrence", the Wisconsin Supreme Court has equated the term "accident" as used in a CGL policy with the insured's negligence. *Doyle v. Engelke*, 580 N.W.2d 245, 250 (Wis. 1998). Since the

property damage is alleged to have resulted from Emanuelson's negligence, I conclude that the insured's claim falls within the policy's initial grant of coverage.

American Family argues that the claim does not fall within the policy's initial grant of coverage because plaintiffs' damages flow from Emanuelson's breach of contract. Citing *Wausau Tile, Inc. v. County Concrete Corp.*, 593 N.W.2d 445, 460 (Wis. 1999), American Family contends that a breach of contract does not constitute an "occurrence" within the meaning of a CGL policy. (American Family Br. In Supp. at 19.) But as the Wisconsin Supreme Court pointed out more recently in *American Girl*, it is the character and cause of the damages, not the legal theory under which recovery is sought, that determines whether coverage exists. *American Girl*, 673 N.W.2d at 76-77. And while it is true that damages due to faulty workmanship by a contractor are generally not covered under a CGL policy, this is not because such damages do not fall within the initial grant of coverage. Rather, damages for faulty workmanship are generally excluded under the so-called business risk exclusions of the CGL policy. *Id.* at 76. It is to those exclusions that I now turn.

The business risk exclusions are intended to exclude coverage for risks relating to the repair or replacement of the insured's faulty work or products, or defects in the insured's work or product itself. *Vogel v. Russo*, 613 N.W.2d 177, 182 (Wis. 2000) (citing *Bulen v. West Bend Mut. Ins. Co.*, 371 N.W.2d 392, 394 (Wis. Ct. App.1985)). American Family cites several of the exclusions in its policy that are intended to accomplish just that. Exclusion (j), for example, excludes coverage for property damage to:

> . . .
>
> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of these operations;

5

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

. . .

(Pless Aff. Ex A.CGL Coverage Form at 4.) Exclusion (k) excludes coverage for

"Property damage" to "your product" arising out of it or any part of it.

(*Id.*) Exclusion (l) excludes coverage for

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

(*Id.*) And finally, exclusion (m) excludes coverage for

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;"[1] or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

(*Id.*)

---

[1]The policy defines "your work" to mean:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

(1) Warranties or representations made at any times with respect to the fitness, quality, durability, performance or use of "your work," and

(2) The providing of or failure to provide warnings or instructions.

(*Id.*)

6

I note at the outset that coverage for most of the damages sought by the plaintiffs is excluded by Exclusion (j)(5). The policy provides no coverage for property damage to that particular part of the plaintiffs' house on which Emanuelson or his subcontractors worked. Of course, Emanuelson was not the only contractor working on the plaintiffs' house. The plaintiffs retained other contractors, who were not subcontractors to Emanuelson, to perform parts of the construction. (Burnett Aff., Ex. A; Nesbitt Aff., Ex. 2 at 150-153.) The plaintiffs allege that deficiencies in Emanuelson's work caused difficulties to the other contractors in completing *their* work. (Burnett Aff., Ex. B at 140-146; Nesbitt Aff., Ex. 2 at 117-119, 145-146.) Specifically, the plaintiffs allege that Emanuelson improperly used "microlam beams" in certain parts of the house. Because other contractors could not drill through those beams, wiring, plumbing and ductwork had to be built around them. In one instance, the plumbing ended up encroaching on a room as a result. In addition, plaintiffs claim a pantry had to be eliminated because Emanuelson failed to properly design a staircase. In another instance, another contractor's ductwork had to be torn out to make room for an extra wall to support trusses improperly installed by Emanuelson. Plaintiffs and Emanuelson argue that the extra expense incurred by other subcontractors as a result of Emanuelson's work and the diminution in value of the house is covered under the policy.

It is doubtful, however, that extra expense incurred in building around the beams or changes in the plans necessitated by Emanuelson's allegedly negligent design and construction constitute property damage as defined in the policy. Expenses incurred in constructing a new house, even extra expenses, are neither physical injury to property nor a loss of use of tangible property. Property can't be damaged before it exists. And while exposed pipes may not be aesthetically pleasing, they are no less useful. It may be true that Emanuelson's faulty design and workmanship

7

left plaintiffs with less of a home than they dreamed of, but damage to a dream is not property damage under a CGL Policy. *See also Vogel v. Russo*, 613 N.W.2d at 184 ("Diminution in value--even to the point of worthlessness--is not the same as "loss of use" under the insurance policy, which by its plain language contemplates some sort of loss of use in fact, not a reduction in value.").

But plaintiffs' allegation that a contractor's ductwork had to be torn out to make room for an extra wall to support the trusses improperly installed by Emanuelson is in a different category. This expense may constitute property damage since it could involve the physical injury to tangible property. I therefore turn to consideration of whether any of the exclusions cited by American Family would apply to this aspect of plaintiffs' claim.

Exclusion (j)(5) only excludes damage to "that particular part of real property on which you or any contractor or subcontractors working directly or indirectly on your behalf are performing operations . . . ." There is no evidence, however, that Emanuelson or any contractor or subcontractor working on his behalf performed operations on the ductwork that had to be torn out. Thus, exclusion (j)(5) would not apply. Exclusion (j)(6) applies to "that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." But there is no evidence that any of Emanualson's work was performed on the ductwork. Exclusion (j)(6) is therefore inapplicable, as well.

American Family also cites Exclusions (k) and (l), the product and work exclusions. But Exclusion (k) applies to products "other than real property". (Pless Aff., Ex A.,CGL Coverage Form at 12.) It therefore has no application here. Ductwork installed in a home is considered a fixture, and fixtures constitute real property under Wisconsin law. *Premonstratensian Fathers v.*

8

*Badger Mut. Ins. Co.*, 175 N.W.2d 237, 239 n.1 (Wis. 1970) For Exclusion (l) to apply, the damage must be included in the "products-completed operations hazard." But as American Family itself acknowledges, none of the damages claimed by plaintiffs fall within the completed operations hazard for the simple reason that Emanuelson never completed his work. (Reply Br. at 4.) Thus, Exclusion (l) is not applicable.[2]

Finally, American Family cites Exclusion (m). But for Exclusion (m) to apply, the property damage must be "impaired property" or property that has not been physically injured. The policy defines "impaired property" as

> tangible property, other than your product or your work, that cannot be used or is less useful because:
>
> > a. It incorporates your product or your work that is known or thought to be defective, deficient, inadequate, or dangerous; or
> >
> > b. You have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by:
>
> > a. The repair, replacement, adjustment, or removal of your product or your work; or
> >
> > b. Your fulfilling the terms of the contract or agreement.

(Pless Aff., Ex. A at 10.) Here, there is no evidence that the ductwork can be restored to use by the repair, replacement, adjustment, or removal of Emanuelson's work or by his fulfilling the terms of the agreement. Thus, it would not constitute "impaired property." And the fact that the ductwork

---

[2] Exclusion (l) is also inapplicable because it excepts damage arising out of work performed on behalf of the insured by a subcontractor. Plaintiffs claim that the truss work which necessitated the removal of the duct work was done by one of Emanuelson's subcontractors. This fact, as well, makes Exclusion (l) inapplicable.

9

was "torn out" suggests it was physically injured. I am therefore unable to conclude, at least as the record now stands, that Exclusion (m) applies.

The plaintiffs also allege that they lost summer rental income as a result of the deficiencies in Emanuelson's work. (Pless Aff., Ex. B at 38-39.) Because the policy includes within its definition of "property damage" the "loss of use" of "tangible property," whether or not such property was "physically injured," coverage may exist for this lost income. It may be that coverage for such damages would be excluded under Exclusion (m). But because it is unclear whether the house can be restored to its full intended use by the "repair, replacement, adjustment or removal" of Emanuelson's work, I am unable to determine whether the house would constitute impaired property within the meaning of Exclusion (m). And because there is evidence of physical damage (remember the ductwork), I cannot say the house was property that was not physically injured. Thus, there may be coverage for this aspect of plaintiffs' claim, as well.

Accordingly, American Family's duty to defend must continue and the question of whether it must indemnify Emanuelson for any of the damages plaintiffs seek must await trial.

**IT IS THEREFORE ORDERED** that American Family's motion for a declaratory judgment is hereby **DENIED.** Final determination of coverage must await the trial of this matter.

Dated this   7th   day of July, 2005.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
